1    David S. Gingras, #021097
     **Gingras Law Office, PLLC**
2    4802 E. Ray Road, #23-271
     Phoenix, AZ 85044
3    Tel.: (480) 264-1400
     Fax: (480) 248-3196
4    David@GingrasLaw.com

5    Howard Neu, Esq. (*Pro Hac Vice* Application Pending)
     FLA BAR NO. 108689
6    Law Office of Howard Neu, P.A.
7    4839 S.W. Volunteer Road, Suite 512
     Southwest Ranches, FL 33330
8    Tel.: (954) 662-1816
     Fax: (954) 337-2324
9    Primary: howard@neulaw.com
10
11   Attorneys for Plaintiff

12

13                    **UNITED STATES DISTRICT COURT**

14                         **DISTRICT OF ARIZONA**

15   Mira Holdings, Inc,                  Case No._____
16   A Minnesota Corporation,
                                          **COMPLAINT FOR:**
17
             Plaintiff,                   **[1] DECLARATORY RELIEF
18                                        LANHAM ACT, 15 U.S.C.
     v.                                   §1114(2)(D)(iv) and §1125 (a);
19                                        and
     UHS of Delaware, Inc., a Delaware    **[2] REVERSE DOMAIN NAME
20   corporation,                         HIJACKING
                                          ANTICYBERSQUATTING
21           Defendant.                   CONSUMER
                                          PROTECTION ACT,
22                                        15 U.S.C. § 1114(2)(D)(v) and §1125(d)**
23
24
25
26
27
28

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

Plaintiff, Mira Holdings, Inc ("Mira Holdings" or "Plaintiff"), files this, its Complaint

against UHS of Delaware, Inc., Inc. ("UHS" or "Defendant"), and alleges as follows:

## JURISDICTION AND VENUE

1.     This is a civil action for Declaratory Judgment under the Lanham Act, 15

U.S.C. §§ 1114(a) and 1125(a); and reverse domain name hijacking in violation of the

Anticybersquatting Consumer Protection Act, 15 U.S.C. §1114(2)(D)(v).

2.     This Court has personal jurisdiction over Defendant as Defendant has

consented to jurisdiction by this court in selecting "Registrar" as "Mutual Jurisdiction"

with the World Intellectual Property Organization (WIPO) in accordance with Paragraph

3(b)(xii) of the Uniform Domain Dispute Resolution Policy (UDRP) of the International

Committee of Assigned Names and Numbers (ICANN).

3.     Venue in this Court exists as the office of the Registrar of the domain name,

GoDaddy.com, LLC. is located in Scottsdale, Maricopa County, Arizona, and, pursuant

to 28 U.S.C. § 1391(b)(1) and (c), as under subsection (b)(2) because a substantial part of

the events giving rise to the claims alleged in this Complaint occurred in this District.

## PARTIES

4.     Plaintiff, Mira Holdings, Inc, is a Minnesota Corporation with its office at

2751 Hennepin Avenue, Suite 159, Minneapolis, Minnesota 55408.

5.     On information and belief, Defendant, UHS of Delaware, Inc., is a Delaware

Corporation having its principal place of business at 367 South Gulph Road, King of

Prussia, Pennsylvania 19406.

## NATURE OF THE CONTROVERSY

6.     This is an action for Declaratory Judgment and certain other statutory

remedies under the Trademark laws of the United States and the Anticybersquatting

Consumer Protection Act ("ACPA") 15 U.S.C. §1125(d).  The Plaintiff is the registrant

of the internet domain name ProminenceHealth.com.   The domain name has been

"locked" by the registrar, GoDaddy.com, and is at immediate risk of being transferred

away from Plaintiff by, and as a result of, the actions of Defendant, which claim

2

trademark rights and certain other rights with respect to the term and the domain name PromineneHealth.com. The Plaintiff seeks a determination by this court that the Plaintiff's registration and/or use of ProminenceHealth.com is not, and has not been in violation of the ACPA and that Plaintiff's use of ProminenceHealth.com constitutes neither an infringement, a threat of dilution of Defendant's trademark nor a violation of the ACPA.

**FACTS COMMON TO ALL CLAIMS OF RELIEF**

7.     This case involves "reverse domain name hijacking," which occurs when an individual or an entity may allege that it is the owner of a trademark and assert spurious claims of trademark infringement and trademark dilution against the owner of a domain name whose chosen domain name is similar or identical to the registered trademark. Defendant is attempting to wrest control of Plaintiff's domain name by asserting baseless allegations of trademark infringement, trademark dilution and cybersquatting.

8.     Plaintiff is in the business of acquiring and using for business purposes, various generic domain names as and when they become available, for leasing, sale or email services.

9.     The disputed Domain Name ProminenceHealth.com was originally purchased by the Plaintiff for a cost of $755 in 2021. Pursuant to his business plan, Plaintiff purchased and registered the domain name on or about April 15, 2021, in good faith at which time (and at all times subsequent thereto) he believed and has had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful, and has "parked" it with a reputable monetizer, Bodis.com, since acquisition. The Plaintiff does not exercise any control over the parking services provided by Bodis.com.

10.     Plaintiff is in the business of registering domain names and using them for email addresses or sale or lease; is the registrant of many generic domain names and has accumulated over 1,000 generic names that are used in this manner.

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

11.     Plaintiff started investing in domain names about 10 years ago. "CooperativeHealth.com", "MintHealth.com", and "PermanentHealth.com" are similar generic domains that are owned by Plaintiff.

12.     Defendant UHS has no registered U.S. trademarks for "Prominence Health" while Plaintiff's domain name is "ProminenceHealth.com" which is made up of 2 common words.  A USPTO Trademark search using TESS (Trademark Electronic Search System) for the terms "Prominence Health" provides "zero" registered results.  On June 2, 2021, Complainant applied for a trademark at the U.S.P.T.O. for "Prominence Health" and made no claim for the exclusive use of the word "health".  That trademark has not yet been registered.  [EXHIBIT A].  In fact, on September 6, 2022, U.S.P.T.O. notified that the Application for the Trademark has been abandoned for failure to file a Statement of Use. [EXHIBIT B].

13.     On October 21st, 2022, Defendant filed a Complaint thereby initiating an arbitration proceeding against Plaintiff with the World Intellectual Property Organization (WIPO) in accordance with the Uniform Domain Name Dispute Resolution Policy ("UDRP") adopted by the Internet Corporation for Assigned Names and Numbers ("ICANN") against the Plaintiff for the domain name ProminenceHealth.com.  On or about October 21st, 2022, the registrar of the domain name, Godaddy.com "locked" the domain name, thereby prohibiting Plaintiff from utilizing the domain name in accordance with the uses typically enjoyed by a registrant of a domain name.  The action to "lock" the domain name was in accordance with the UDRP and associated procedures.

14.     On January 12, 2023, the WIPO panel assigned to the case rendered a decision requiring the transfer of the domain name to Defendant. (WIPO Arbitration and Mediation Center Case No. D2022-3835) [EXHIBIT C].  As of the date of the filing of this complaint, the domain name continues to be "locked" pending the transfer of the registration to the Defendant on January 27, 2023, pursuant to the UDRP decision.

15.     Plaintiff's use of the term as a domain name has not traded upon any goodwill or reputation enjoyed by Defendant as it relates to the products that Defendant offers, nor

4

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

1   is there any possibility of confusion between the products offered by Defendant to the

2   general public. Further, Defendant did not cite one instance of consumers being confused

3   by Plaintiff's web site and Defendant's web site.

4       16.    Plaintiff's use of ProminenceHealth.com as his chosen domain name is a fair

5   or otherwise lawful use of the term.

6       17.    At no time, did Plaintiff trade upon or use Defendant's trademarks for

7   "Prominence Health".

8       18.    At no time did the Plaintiff register or use the domain name

9   ProminenceHealth.com in "Bad Faith" as defined by 15 U.S.C. §1125.

10      19.    Due to the impending transfer of the domain name to the Defendant pursuant

11  to the Decision by the WIPO Panel, Plaintiff is now forced to bring this action to protect

12  its rights in its intellectual property. Plaintiff has had to retain counsel and incur

13  substantial fees and costs to bring this suit.

14      20.    Because WIPO has directed that the ProminenceHealth.com domain name be

15  transferred to Defendant, this Court has jurisdiction under 15 U.S.C. §1114(2)(D)(v) to

16  determine whether Plaintiff's registration and use of ProminenceHealth.com is unlawful

17  under the ACPA and the Lanham Act.

18      21.    Based on the facts set forth herein, an actual controversy has arisen and now

19  exists between Plaintiff and Defendant regarding whether or not Plaintiff's use of the

20  term ProminenceHealth.com as its domain name infringes Defendant's trademarks and/or

21  constitutes trademark dilution and/or can serve as the basis for any relief under any

22  Federal or state law.

23      22.    Plaintiff has never sold, transferred, or trafficked in the domain name. Nor

24  has Plaintiff at any time specifically offered to sell the domain name to Defendant,

25  though the domain name, along with other domain names registered by Plaintiff are

26  available for sale.

27      23.    At all times, Plaintiff utilized the domain name in a bona fide manner for bona

28  fide purposes.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

24.     Plaintiff did not have any intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

25.     Plaintiff did not provide material and misleading false contact information when applying for the registration of the domain name.  Plaintiff did not fail to maintain accurate contact information with respect to the domain name in question or with respect to any other domain name.

26.     Plaintiff's use of ProminenceHealth.com as its chosen domain name is a fair or otherwise lawful use of the term.

27.     Because of the actions of Defendant, and its claims of trademark infringement and dilution, Plaintiff faces losing valuable rights in its Internet domain name.

**FIRST CLAIM FOR RELIEF**
**Declaratory Relief – No Violation of the Lanham Act, 15 U.S.C. §1125 (d)**

28.     Mira Holdings, Inc. incorporates by reference the factual allegations set forth in Paragraphs 7 through 26 above.

29.     The ACPA, provides a cause of action for a registrant whose domain name has been suspended, disabled, or transferred by which the registrant may sue for a declaration that the registrant is not in violation of the Act and for injunctive relief to the domain name registrant, including the reactivation of the domain name. 15 U.S.C.§ 1114(2)(D)(v).

30.     Section 1114(2)(D)(v) provides a registrant who is threatened with the loss of his domain name under the UDRP with a cause of action for an injunction returning the domain name if the registrant can show that the registrant is in compliance with the ACPA.

31.     Defendant does not have a registered U.S. Trademark for "Prominence Health" nor did it have such a right at the time Plaintiff registered the domain name.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

32.     Plaintiff did not register the domain name ProminenceHealth.com with the bad faith intent to profit from the goodwill of defendant as "Bad Faith" is defined in 15 U.S.C. §1125(d)(1)(A)(1).

33.     Plaintiff is entitled to have the unencumbered use of the domain name ProminenceHealth.com and to have the domain name reactivated and to have any and all suspensions or transfers terminated and prohibited.

34.     In the UDRP action, Defendant intentionally misrepresented and incorrectly stated in its Complaint that Plaintiff had been using the domain name ProminenceHealth.com to sell the domain name to the Defendant, when the truth was that from acquisition to date, there were no authorized offers to sell the domain name to Defendant.  These allegations misrepresented by Defendant to the UDRP Panel were the express cause of the WIPO panel to require Plaintiff to transfer the Domain Name to Defendant [EXHIBIT C].

35.     The Defendant fraudulently claimed to the UDRP Panel that the disputed Domain Name was used intentionally to attract, for commercial gain, Internet users to the Plaintiff's website or other on-line locations, creating the possibility of confusion with the mark of the Defendant as to the source or commercial origin of those products, though knowing that there were no products of Defendant or Defendant's competitors being promoted by Plaintiff.

36.     As a direct and proximate result of Defendant's wrongful conduct, Mira Holdings, Inc. has been and will continue to be damaged.

37.     Unless this Court issues a Declaratory Judgment that Plaintiff is entitled to maintain registration of its Domain Name, ProminenceHealth.com, the transfer of the Domain Name to Defendant will damage Plaintiff irreparably.  Mira Holdings, Inc. has no adequate remedy at law.

38.     Defendant's acts make this an exceptional case under 15 U.S.C. §1117(a), and Mira Holdings, Inc. is thus entitled to an award of attorney's fees and costs.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

39.     Alternately, Mira Holdings, Inc. is entitled to elect statutory damages instead of actual damages and profits, pursuant to 15 U.S.C. §1117 (d).

**SECOND CLAIM FOR RELIEF**
**Injunctive Relief– 15 U.S.C. §1114(2)(D)**

40.     Mira Holdings, incorporates by reference the factual allegations set forth in Paragraphs 7 through 26 above.

41.     Section 1114(2)(D)(iv) provides that when a registrar takes an action to transfer a domain name "based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorneys' fees, incurred by the domain name registrant as a result of such action."

42.     Section 1114(2)(D)(v) provides a registrant may "file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this Act." Under this section, a "court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name back to the domain name registrant."

43.     Mira Holdings' registration and use of the domain Name ProminenceHealth.com was not unlawful under Title 15, United States Code, § 1114(2)(D)(v).

44.     The UDRP Decision is due no deference in this court, which must perform a de novo review of the allegations herein presented.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

A.      For an Order directing the registrar GoDaddy.com to take all action necessary to enable the domain name ProminenceHealth.com; to reactivate the domain name; to discontinue any suspension of the domain name; and to refrain from transferring the domain name from Plaintiff to Defendant;

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

B.     For a declaration from this Court that Plaintiff's registration, use and possession of the domain name ProminenceHealth.com neither infringes defendant's trademarks, nor dilutes the trademarks in any manner nor constitutes a violation of any Federal or State law;

C.     For a declaration from this Court that Plaintiff may continue to use and enjoy its chosen domain name without interference of any type by the Defendant;

D.     For injunctive relief prohibiting Defendant from interfering with or challenging Plaintiff's registration, possession or use of the subject domain name;

E.     For attorney's fees and costs incurred by the Plaintiff in bringing this action; and

F.     For such other relief as this Court may deem just and proper.

DATED: January 25, 2023.

**GINGRAS LAW OFFICE, PLLC**

David S. Gingras, Esq.
**Gingras Law Office, PLLC**
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Tel.: (480) 264-1400
Fax: (480) 248-3196
David@GingrasLaw.com

Howard Neu, Esq.
FLA BAR NO. 108689
Law Office of Howard Neu, P.A.
4839 S.W. Volunteer Road
Suite 512
Southwest Ranches, FL 33330
PHONE 954-662-1816
FAX 954-337-2324
Primary: howard@neulaw.com

Attorneys for Plaintiff
Mira Holdings, Inc.

## JURY DEMAND

Demand for Jury Trial Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury of all issues so triable.

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

Exhibit A



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Mon Nov 7 04:07:22 EST 2022*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST
FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

Logout　Please logout when you are done to release system resources allocated for you.

Start　List At: [　　　　] OR Jump to record: [　　　　]　**Record 1 out of 8**

TSDR | ASSIGN Status | TTAB Status　*( Use the "Back" button of the Internet Browser to return to TESS)*

# PROMINENCE HEALTH

| | |
|---|---|
| **Word Mark** | PROMINENCE HEALTH |
| **Goods and Services** | IC 035. US 100 101 102. G & S: Healthcare management service organization (MSO) services, namely, providing practice organization, management and administrative support services to individual physicians or small group practices |
| | IC 036. US 100 101 102. G & S: Insurance services, namely, underwriting, issuance and administration of health insurance |
| | IC 044. US 100 101. G & S: Health care services, namely, wellness programs; Physician services |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 90749456 |
| **Filing Date** | June 2, 2021 |
| **Current Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | December 7, 2021 |
| **Owner** | (APPLICANT) UHS of Delaware, Inc. CORPORATION DELAWARE 367 S. Gulph Road King of Prussia PENNSYLVANIA 19406 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Charles D. Smouse |
| **Prior Registrations** | 4846923;5072124 |

| | |
|---|---|
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "HEALTH" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Exhibit B

| From: | TMOfficialNotices@USPTO.GOV |
| Sent: | Tuesday, September 6, 2022 06:20 PM |
| To: | charles.smouse@uhsinc.com ; UHSCORPTrademarks@uhsinc.com |
| Cc: | carolyn.esch@uhsinc.com ; ip@williamsmullen.com |
| Subject: | Official USPTO Notification: U.S. Trademark SN 90749456 |

OFFICIAL USPTO NOTICE OF ABANDONMENT

TRADEMARK APPLICATION ABANDONED - FAILURE TO FILE TIMELY SOU OR EXTENSION REQUEST

**U.S. Application Serial No.** 90749456
**Mark:** PROMINENCE HEALTH
**Owner:** UHS of Delaware, Inc.
**Docket/Reference No.**

**Issue Date:** September 06, 2022

**The application above is abandoned** because we did not receive within six months of the Notice of Allowance (NOA) issue date:

(1) A Statement of Use (SOU); or

(2) A Request for Extension of Time to File a Statement of Use (Extension Request).

If you did not receive the NOA or if the delay in filing your SOU or Extension Request was unintentional, you can file a "petition to revive" using the Petition to Revive Abandoned Application - Failure to File Timely Statement of Use or Extension Request form. **You must file the petition within two months of the issue date of this notice. The petition must include the following:**

(1) A signed statement by someone with firsthand knowledge of the facts, stating that the delay in responding by the due date was unintentional;

(2) A petition fee; and

(3) An SOU or Extension Request and the required fees, including any fees for extension requests that should have been filed if the application had never been abandoned, or, **if you did not receive the NOA,** a clear statement of this fact.

**WARNING:** We cannot grant a petition to revive if it will result in an SOU being filed more than 36 months after the NOA issue date.

**ALTERNATIVE BASIS FOR REGISTRATION:** If you want to revive only the goods and/or services based on use in commerce or on a foreign registration that has already been accepted, you may file a Petition to Revive with Request to Delete Section 1(b) Basis or to Delete Intent-to-Use Goods/Services after Notice of Allowance.

If you have proof that the application was abandoned due to USPTO error, you can file a Request for Reinstatement of the application and include the proof (such as a copy of an email confirmation issued by the USPTO that includes the date of receipt and a summary of the online submission). You must file the request **within two months of the issue date of this notice.** There is no fee for this request.

View this notice and other documents for this application online in the Trademark Status and Document Retrieval (TSDR) database.

For more information on filing a petition, see our webpage on petitions.

For questions about this notice, filing a petition, or filing a request for reinstatement, contact the Trademark Assistance Center at 1-800-786-9199 (select option 1) or at TrademarkAssistanceCenter@uspto.gov.

Exhibit C



## ADMINISTRATIVE PANEL DECISION

UHS of Delaware, Inc. v. Private Domain, Above Privacy / Mira Holdings, Inc.
Case No. D2022-3835

### 1. The Parties

Complainant is UHS of Delaware, Inc., United States of America ("United States"), represented by Williams Mullen, P.C., United States.

Respondent is Private Domain, Above Privacy, United States / Mira Holdings, Inc., United States, represented by Law Office of Howard M. Neu, P.A., United States.

### 2. The Domain Name and Registrar

The disputed domain name <prominencehealth.com> (the "Domain Name") is registered with GoDaddy.com, LLC (the "Registrar").

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on October 13, 2022. On October 13, 2022, the Center transmitted by email to the Registrar a request for registrar verification in connection with the Domain Name. On October 17, 2022, the Registrar transmitted by email to the Center its verification response disclosing registrant and contact information for the Domain Name which differed from the named Respondent and contact information in the Complaint (Registration Private, Domains By Proxy, LLC, DomainsByProxy.com). The Center sent an email to Complainant on October 18, 2022, the registrant and contact information disclosed by the Registrar, and inviting Complainant to submit an amendment to the Complaint. Complainant filed an amended Complaint on October 20, 2022.

The Center verified that the Complaint together with the amended Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified Respondent of the Complaint, and the proceedings commenced on October 21, 2022. In accordance with the Rules, paragraph 5, the due date for Response was November 10, 2022. On November 4, 2022, the Respondent requested an extension for Response and the due date for Response was subsequently extended to November 14, 2022. The Response was filed with the Center November 14, 2022.

The Center appointed Robert A. Badgley, Martin Schwimmer and Warwick A. Rothnie as panelists in this matter on December 12, 2022. The Panel finds that it was properly constituted. Each member of the Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

## 4. Factual Background

The Parties have raised various factual allegations and legal issues, the consideration of which is not essential to a disposition of this dispute under the UDRP. The Panel will endeavor to confine its discussion to those points which are needed to resolve this case.

Complainant describes itself as "one of the largest and most respected providers of hospital and healthcare services in the United States". Complainant provides services online at a website accessible via the domain name <prominencehealthplan.com>, a domain name which it has owned since April 8, 2014, and Complainant provides in-person services at six office locations.

Complainant holds several registered trademarks, including the word mark PROMINENCE HEALTH PLAN, registered with the United States Patent and Trademark Office ("USPTO"), Reg. No. 4,846,923, registered on November 3, 2015, in connection with *inter alia* "health insurance administration". According to Complainant, its trademarks are "extremely well known" and "incredibly well recognized by consumers". Notwithstanding these superlatives, there is no evidence in the record to support these assertions about renown.

The Domain Name was originally registered on March 7, 2014, which is prior to Complainant's first use of the trademark PROMINENCE HEALTH PLAN in commerce, and prior to Complainant's first trademark registration (November 3, 2015). Complainant alleges, however, that Respondent is not the original registrant of the Domain Name. According to Complainant:

"Complainant resolved a dispute with the previous owner of the domain name <prominencehealth.com>, and, as a result, the parties intended to transfer the domain name to Complainant. However, upon information and belief, Respondent acquired the disputed domain name <prominencehealth.com> on or about November 8, 2021 (as reflected by the "updated date" shown in the WhoIs report) after the previous owner's registration of the domain name unintentionally lapsed and the domain name was released."

Complainant's account of the "dispute" with the prior owner of the Domain Name, the terms of the settlement with that other party, and the circumstances under which a transfer of the Domain Name failed to occur, is very thin on detail.

Respondent describes itself as "a professional domain name investor who owns over 1,000 domains including 'CooperativeHealth.com', 'MintHealth.com', and 'PermanentHealth.com'". Respondent claims that the disputed Domain Name is "a valuable two-word generic domain with an estimated value of more than [USD] 3,300", according to a GoDaddy appraisal tool. Respondent asserts that it sold the domain name <universityhealth.com> for USD 66,000 in October 2022.

According to Respondent, it acquired the Domain Name on April 15, 2021 (more than six months earlier than Complainant alleged) by paying USD 755 at an auction. Respondent asserts that, at the time it acquired the Domain Name, it performed a USPTO search for "PROMINENCE HEALTH", and there was no exact match for that trademark registration in the USPTO database. However, Complainant's registered mark PROMINENCE HEALTH PLAN does appear among the USPTO search results (according to an exemplary screenshot annexed to the Response).

The Domain Name currently resolves to a parking page with various hyperlinks, such as "Health Care Services" and "Medical Services". According to the Complaint, clicking these links leads the user to the websites of Complainant's competitors. Complainant alleges that these are "paid" links for which

Respondent derives income.

According to Respondent, the Domain Name "has been 'parked' at professional monetizer, Bodis.com since acquisition and is offered for general sale at Afternic.com". Respondent denies that the Domain Name has ever been offered directly to Complainant for sale, and Respondent denies that the health-related business whose website is accessible via a hyperlink at the parking page is "a competitor of Complainant".

## 5. Parties' Contentions

### A. Complainant

Complainant asserts that it has established all three elements required under the Policy for a transfer of the Domain Name.

### B. Respondent

Respondent's essential arguments are reflected above in the "Factual Background" section.

## 6. Discussion and Findings

Paragraph 4(a) of the Policy lists the three elements which Complainant must satisfy with respect to the Domain Name:

(i)        the Domain Name is identical or confusingly similar to a trademark or service mark in which Complainant has rights;  and
(ii)       Respondent has no rights or legitimate interests in respect of the Domain Name;  and
(iii)      the Domain Name has been registered and is being used in bad faith.

### A. Identical or Confusingly Similar

The Panel concludes that Complainant has rights in the trademark PROMINENCE HEALTH PLAN through registration demonstrated in the record. The Panel also concludes that the Domain Name is confusingly similar to that mark. The omission of the word "plan" does not prevent the mark from being recognizable in the Domain Name, since the dominant portion of the mark – PROMINENCE HEALTH – is entirely reproduced in the Domain Name.

Complainant has established Policy paragraph 4(a)(i).

### B. Rights or Legitimate Interests

Pursuant to paragraph 4(c) of the Policy, Respondent may establish its rights or legitimate interests in the Domain Name, among other circumstances, by showing any of the following elements:

(i)        before any notice to you [Respondent] of the dispute, your use of, or demonstrable preparations to use, the Domain Name or a name corresponding to the Domain Name in connection with a *bona fide* offering of goods or services;  or
(ii)       you [Respondent] (as an individual, business, or other organization) have been commonly known by the Domain Name, even if you have acquired no trademark or service mark rights;  or
(iii)      you [Respondent] are making a legitimate noncommercial or fair use of the Domain Name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue.

The Panel concludes that Respondent lacks rights or legitimate interests in connection with the Domain Name. Respondent claims that it is a domain name investor, and that it holds several two-word domain names (*i.e.*, two words in the Second-Level Domain) containing the word "health". Respondent viewed this Domain Name as being worth several times the price (USD 755) for which Respondent bought the Domain Name at auction in April 2021.

Respondent is correct that acquiring domain names for resale is not in itself an illegitimate undertaking. In this case, however, the Panel concludes that Respondent's acquisition of this Domain Name is not legitimate. Respondent admittedly conducted a USPTO trademark search, which revealed Complainant's registered trademark, PROMINENCE HEALTH PLAN. That trademark is obviously very similar to the Domain Name. In the Panel's view, the similarity is so close that Respondent should have realized that it would be capitalizing on Complainant's registered trademark by acquiring the Domain Name and selling it for a profit.

Complainant has established Policy paragraph 4(a)(ii).

## C. Registered and Used in Bad Faith

Paragraph 4(b) of the Policy provides that the following circumstances, "in particular but without limitation", are evidence of the registration and use of the Domain Name in "bad faith":

(i)     circumstances indicating that Respondent has registered or has acquired the Domain Name primarily for the purpose of selling, renting, or otherwise transferring the Domain Name registration to Complainant who is the owner of the trademark or service mark or to a competitor of that Complainant, for valuable consideration in excess of its documented out of pocket costs directly related to the Domain Name; or

(ii)    that Respondent has registered the Domain Name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that Respondent has engaged in a pattern of such conduct; or

(iii)   that Respondent has registered the Domain Name primarily for the purpose of disrupting the business of a competitor; or

(iv)    that by using the Domain Name, Respondent has intentionally attempted to attract, for commercial gain, Internet users to Respondent's website or other online location, by creating a likelihood of confusion with Complainant's mark as to the source, sponsorship, affiliation, or endorsement of Respondent's website or location or of a product or service on Respondent's website or location.

The Panel concludes that Respondent registered and used the Domain Name in bad faith under the Policy. The Panel incorporates its discussion above in the "Rights or Legitimate Interests" section.

It is clear that Respondent was aware of Complainant's registered mark when acquiring the Domain Name. That mark turned up in a search Respondent admits to having performed. The Panel also concludes that Respondent registered the Domain Name for the purpose of resale more likely than not to Complainant. This conduct constitutes bad faith within the meaning of the Policy.

Further, pending sale, the Domain Name resolves to a parking page which features what appear to be pay-per-click ("PPC") links. Respondent states that the Domain Name "has been 'parked' at professional monetizer Bodis.com since acquisition". As the holder of the Domain Name, Respondent is responsible for the use to which it is put, in the absence of evidence showing efforts to suppress targeting of another's trademark. See WIPO Overview of WIPO Panel Views on Selected UDRP Questions, Third Edition, section 3.5.

Complainant has established Policy paragraph 4(a)(iii).

**7. Decision**

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the Domain Name <prominencehealth.com> be transferred to Complainant.


*/Robert A. Badgley/*
**Robert A. Badgley**
Presiding Panelist


*/Martin Schwimmer/*
**Martin Schwimmer**
Panelist


*/Warwick A. Rothnie/*
**Warwick A. Rothnie**
Panelist
Date:  December 26, 2022