**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mira Holdings Incorporated,<br><br>    Plaintiff,<br><br>v.<br><br>UHS of Delaware Incorporated,<br><br>    Defendant. | No. CV-23-00169-PHX-MTL<br><br>**ORDER** |

This case involves a dispute over the internet domain name ProminenceHealth.com (the "Disputed Domain"). Plaintiff Mira Holdings Inc. ("Mira") brought this action to halt the transfer of that domain name to Defendant UHS of Delaware Inc. ("UHSD"). Defendant moves to dismiss Plaintiff's First Amended Complaint ("FAC") (Doc. 12). (Doc. 24.) The motion is fully briefed, and the Court heard oral argument on the same. (Docs. 24, 26, 29.) For the reasons stated below, the Court will grant the motion in part and deny the motion in part.

**I.    BACKGROUND**

On April 15, 2021, Plaintiff purchased the Disputed Domain in connection with Mira's business plan to acquire and use various generic domain names containing the word "health" "as and when they become available for leasing, sale or email services."[1] (Doc. 12, ¶¶ 8-10.) Plaintiff then registered the Disputed Domain with third-party registrar GoDaddy, Inc. ("GoDaddy"). (*Id.*, ¶ 9, 13.) Since acquiring the Disputed Domain, Mira

---

[1] The Disputed Domain was originally registered on March 7, 2014 by a different owner, but this fact is not pleaded in Plaintiff's FAC. (*See* Doc. 1 at 18.)

has "parked" the domain name with a "parking company" monetizer, Bodis.com, a common practice for domain registrants.[2] (*Id.*, ¶ 9.)

Defendant UHSD is in the healthcare services industry. (*See* Doc. 1 at 18.) Defendant applied for a trademark registration for "Prominence Health Plan" in connection with, *inter alia*, "health insurance administration." (*Id.*) The mark registered on November 3, 2015. (*Id.*) After learning of Plaintiff's registration of the Disputed Domain, Defendant initiated a domain name transfer proceeding with the World Intellectual Property Organization ("WIPO") in October 2022.[3] (Doc. 12, ¶ 13.) On January 12, 2022, WIPO issued a decision ordering GoDaddy to initiate the transfer of the Disputed Domain to Defendant.[4] (*Id.*, ¶ 14.) As of the filing of the FAC, "the domain name continues to be 'locked' pending the transfer of the registration to the Defendant. . . ."[5] (*Id.*)

Plaintiff brought this action to prevent the transfer of the Disputed Domain, asserting claims under the Anticybersquatting Consumer Protection Act ("ACPA"), Pub. L. No. 106-113, §§ 3001-01, 113 Stat. 1501 (1999). Count one of the FAC seeks a declaration that Plaintiff's registration and use of ProminenceHealth.com is not unlawful under Section 1125(d). (Doc. 12, ¶¶ 28-38); *see* 15 U.S.C. § 1114(2)(D)(v). Count two seeks an injunction against the pending transfer under Section 1114(2)(D). (Doc. 12,

---

[2] A "parking company" provides related ad content for the domain webpage and may share the revenue earned with the domain owner. *Ricks v. BMEzine.com*, 727 F. Supp. 2d 936, 943 (D. Nev. 2010).
[3] WIPO is a United Nations Agency that provides various intellectual property services, including domain name dispute resolution pursuant to the Uniform Domain Name Resolution Policy ("UDRP"). "This administrative proceeding allows entities to challenge ownership of domain names and, upon prevailing, obtain ownership and control over the domain names." *Dent v. Lotto Sport Italia SpA*, No. CV-17-00651-PHX-ROS, 2018 WL 11318189, at *1 (D. Ariz. Feb. 12, 2018).
[4] The WIPO panel concluded that the domain name was confusingly similar to the "Prominence Health Plan" mark, Plaintiff had no right or legitimate interest in the domain, and Plaintiff had registered and used it in bad faith. (*See* Doc. 1 at 19-20.) "The WIPO decision 'is not accorded deference on the merits in federal court.'" *IFIXITUSA LLC v. iFixit Corp.*, No. CV-21-00887-PHX DGC, 2022 WL 2117845, at *1 n.2 (D. Ariz. Jun. 13, 2022) (quoting *Dent v. Lotto Sport Italia SpA*, No. CV-17-00651-PHX-DMF, 2021 WL 242100, at *1 (D. Ariz. Jan. 25, 2001) (citations and alterations omitted)); *AIRFX.com v. AirFX LLC*, No. CV 11-01064-PHX-FJM, 2011 WL 5007919, at *4 (D. Ariz. Oct. 20, 2011) ("[F]indings of the UDRP panel . . . are not binding on this [C]ourt.").
[5] Plaintiff alleges that because the domain is "locked" by GoDaddy, Plaintiff is prohibited from using the domain name and GoDaddy will transfer the domain to Defendant unless Plaintiff secures an injunction from this court. (Doc. 12, ¶ 13; Doc. 26 at 4.)

¶¶ 39-43); *see* 15 U.S.C. § 1114(2)(D)(v)-(iv). Defendant moves to dismiss both counts under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. 24.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).

The Court must accept material allegations in the Complaint as true and construe them in the light most favorable to Plaintiff. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). "Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). In general, review of a Rule 12(b)(6) motion is "limited to the content of the complaint." *North Star Int'l*, 720 F.2d at 581; *see also* Fed. R. Civ. P. 12(d). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Tellabs, Inc. v. Makor Issues & Rts.*, Ltd., 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

## III.   DISCUSSION

### A.   Standing

Defendant argues that Plaintiff does not have standing to bring this lawsuit because it is not the "domain name registrant" as that term is used in the ACPA. (Doc. 24 at 4-5.) Defendant asserts that Plaintiff's domain privacy service, "Above Privacy," is the actual domain name registrant so Plaintiff is without standing to bring this suit. (*Id.*) Although Defendant does not address which type of standing Plaintiff is lacking, it appears that Defendant attacks Plaintiff's statutory standing. *Shenzhen Big Mouth Tech. Co., Ltd. v. Factory Direct Wholesale, LLC*, No. 21-cv-09545-RS, 2022 WL 1016666, at *3 (N.D. Cal. Apr. 5, 2022) ("This motion addresses who is allowed to bring a claim under section 1114(2)(D)(iv), which concerns the statute's restrictions on who may sue, not Article III standing."); *see also Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007) ("Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded this injured plaintiff the right to sue the defendant to redress his injury.")

Under Section 1114(2)(D)(iv), a trademark owner that causes a domain name transfer by making a knowing and material misrepresentation regarding the domain name's similarity to a protected mark is liable for any damages incurred by the "domain name registrant." 15 U.S.C. § 1114(2)(D)(iv). Similarly, Section 1114(2)(D)(v) allows a "domain name registrant" "to file a civil action to establish that the registration or use of the domain name . . . is not unlawful . . ." when its domain name has been "suspended, disabled, or transferred." *Id.* § 1114(2)(D)(v). Under both sections, the "domain name registrant" may be entitled to injunctive relief. *Id.* § 1114(2)(D)(iv)-(v). Additionally, Section 1125(d)(1)(D) limits liability for cyberpiracy to the domain name registrant "or that registrant's authorized licensee." *Id.* § 1125(d)(1)(D).

Defendant only invokes *Facebook Inc. v. Namecheap Inc.*, No. CV-20-00470-PHX-GMS, 2020 WL 6585534 (D. Ariz. Nov. 10, 2020) to support its position. In *Facebook Inc.*, the original domain name registrants used domain privacy service WhoisGuard to

shield their contact information from the public. *Id.*, at *1. There, WhoisGuard "register[ed] [its] customers' domain names in [its own] name and license[d] the domain names back to the customers. As the domain name registrant, WhoisGuard's name, not the name of the customer, is listed in the WHOIS record, a directory that contains the identity and contact information for domain names."[6] *Id.* When the trademark owner requested the customer's contact information from WhoisGuard related to potential ACPA violations, WhoisGuard refused. *Id.*, at *2. This Court found that it could exercise personal jurisdiction over WhoisGuard for alleged violations of the ACPA based on its contractual arrangements and its refusal to identify the underlying alleged infringers. *Id.*, at *3 ("Once a [] customer elects to use WhoisGuard's proxy service, WhoisGuard becomes the domain name registrant for that customer's domain.")

*Facebook Inc.* did not address the question presented here, whether a domain name owner has statutory standing under the ACPA when it uses a domain privacy service to shield its contact information from the public. *Facebook Inc.* did not address standing at all, but instead evaluated personal jurisdiction over the third-party domain privacy service based on its own actions in failing to disclose its customer's identities during an ACPA dispute. 2020 WL 6585534, at *1-3. Thus, the Court declines to apply the *Facebook Inc.* holding to this case.[7] Defendant does not provide any other support for its position, and the Court is not aware of any cases holding that a domain name owner forgoes its rights under the ACPA by electing to use a domain privacy service to shield its personal information. Instead, other courts have implicitly recognized that domain name registrants may properly conceal their identity through a domain privacy service. *See, e.g., Getir U.S., Inc. v. <getir190.com>*, No. 1:21cv1237 (RDA/WEF), 2023 WL 3061870, at *8 (E.D. Va. Mar, 14, 2023) (evaluating whether "anonymous registrants" acted in bad faith under the

---

[6] "WHOIS is a database maintained by domain name registrars which [identifies] the person who owns particular domain names." *Ricks*, 727 F. Supp. 2d at 943 n.2 (citing *Kremen v. Cohen*, 325 F.3d 1035, 1049 n.12 (9th Cir. 2003)).
[7] Even if the Court were persuaded to apply *Facebook Inc.*, there are not enough facts presented here regarding the arrangement between Mira and its domain privacy service, Above Privacy, to draw conclusions about Mira's status as the actual owner and user of the domain name.

ACPA); *Guo v. 8bo.com*, No. 13-cv-05299 NC, 2014 WL 2581315, at *2–3 (N.D. Cal. Jun. 6, 2014) (recognizing that a plaintiff must properly serve the "real owner" of a domain name via the intermediate privacy service registrant's address listed in the WHOIS record for the domain name); *Doggie Dental, Inc. v. Shahid*, No. 4:19-cv-01705-KAW, 2021 WL 4582112, at *3-4 (N.D. Cal. Jun. 17, 2021) (finding service of process adequate for purposes of default judgment where the plaintiff, *inter alia*, personally served a subpoena on a domain privacy service listed as the domain name registrant requesting the identity of the website owner).

The ACPA does not define "domain name registrant" and is silent regarding who has standing to sue when a domain privacy service is used to conceal the domain owner's personal information from the public. "When construing a statute a court must 'interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history and purpose.'" *Blair v. Automobili Lamborghini SpA*, No. CV-22-01439-PHX-ROS, 2023 WL 4548352, at *4 (D. Ariz. July 14, 2023) (quoting *Abramski v. United States*, 573 U.S. 169, 179 (2014)). "When faced with two proposed meanings of a particular statutory term, both of which have some basis, a court should adopt 'the interpretation that is more consistent with the broader context and primary purpose of the statute.'" *Id.* (quoting *Connell v. Lima Corp.*, 988 F.3d 1089, 1097 (9th Cir. 2021)). "Sections 1114(2)(D)(iv) and (v) are part of the same clear statutory scheme: to provide a form of relief to domain name registrants who risk losing their registrations by reverse hijackers." *Shenzhen Big Mouth Tech. Co., Ltd.*, 2022 WL 1016666, at *4. And the purpose of the ACPA is "to protect the rights of domain name registrants against overreaching trademark owners." *Id.* at *5 (quoting S. Rep. No. 106-140 at 11 (1999)) (emphasis removed). Interpreting Section 1114 as suggested by Defendant would frustrate these purposes of the ACPA. *See Blair*, 2023 WL 4548352, at *4.

If only domain privacy services, when used, had statutory standing to sue for reverse domain name hijacking under the ACPA, thousands of website operators who actually maintain and control their domains would lose their statutory right to challenge UDRP

proceeding determinations in federal court. Instead, they would be required to rely on their domain privacy service to file an action to recover access to their domain, even if their domain privacy service had no active role in maintaining or controlling the domain. In any event, it is not clear that a domain privacy service would have a cognizable injury under a constitutional standing analysis, potentially resulting in a situation where no one has standing to sue to regain possession of the disputed domain name. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical[.]") (internal quotations omitted).

Plaintiff avers that it "parks" its website with ad-monetizer Bodis.com, suggesting that Defendant's actions in instituting the UDRP proceedings have negatively affected Plaintiff's own ad-revenue profits, not those of Above Privacy. (Doc. 12, ¶ 9, 27.) In accord with the purpose of the ACPA, "it reasonably follows that the person who can sue is the person who incurred the harm and has a right to the remedy. . . ." *Shenzhen Big Mouth Tech. Co., Ltd.*, 2022 WL 1016666, at *4. Here, that "person" is Mira, not Above Privacy, regardless of whose contact information is displayed on the WHOIS record.[8] At the pleading stage, the Court must credit Mira's allegation in the FAC that it is the domain name owner and "faces losing valuable rights in its Internet domain name." (Doc. 12, ¶¶ 6, 27.) Thus, the Court finds that Plaintiff has established its statutory standing to sue under the ACPA at this stage of the case.[9]

**B.    Count One**

Count one of the FAC generally seeks a declaration that Plaintiff's registration and

---

[8] The Court notes that, in general, a company does not lose its standing to sue for business-related injuries merely because a registered agent is listed on the secretary of state's website for service of process. In the absence of authority suggesting otherwise, the Court presumes, without deciding, that the same is true for original domain name registrants that utilize a domain privacy service but maintain operation and control of the domain in all other respects.
[9] Plaintiff conceded at oral argument, however, that Defendant may reassert its standing argument at the summary judgment stage, should facts elicited during discovery support it as a matter of law.

- 7 -

use of ProminenceHealth.com is not unlawful under Section 1125(d). (Doc. 12, ¶¶ 28-38.) Within that count, Plaintiff invokes Section 1114(2)(D)(v) and alleges that Defendant "intentionally misrepresented" facts about the domain name and Defendant's trademark to the WIPO panel, which is a required element of Section 1114(2)(D)(v). (*Id.*, ¶¶ 29-30, 34.) "These are actually two separate violations: one for fraud in the domain dispute proceeding, (15 U.S.C. § 1114(2)(D)(iv)), and a second for reverse domain name hijacking, (15 U.S.C. § 1114(2)(D)(v))." *Dent v. Lotto Sport Italia SpA*, No. CV-17-00651-PHX-DMF, 2021 WL 242100, at *2 (D. Ariz. Jan. 25, 2001). The Court thus analyzes these as separate causes of action for the purposes of this Order.

### 1. Section 1114(2)(D)(iv)

Under Section 1114(2)(D)(iv), "a domain name registrant may sue a trademark owner for making certain material misrepresentations in the domain name dispute proceeding." *IFIXITUSA LLC*, 2022 WL 2117845, at *2. "To state a claim [under Section 1114(2)(D)(iv)], a plaintiff must show that the disputed domain name was 'suspended, disabled, or transferred' by a domain registrar because of a knowing and material misrepresentation by [a] defendant." *Baklan v. All Answers Ltd.*, No. CV-20-00707-PHX-JZB, 2020 WL 6063254, at *2 (D. Ariz. Oct. 14, 2020) (quoting 15 U.S.C. § 1114(2)(D)(iv)). The knowing and material misrepresentation must be "that a domain name is identical to, confusingly similar to, or dilutive of a mark." *IFIXITUSA LLC*, 2022 WL 2117845, at *6. "Even if the alleged misrepresentations were knowing and material, [Section 1114(2)(D)(iv)] 'includes a causation requirement. The transfer must be "based on" the knowing and material misrepresentations.'" *IFIXITUSA LLC*, 2022 WL 2117845, at *6 (quoting *ISystems v. Spark Networks Ltd.*, No. 3:08-CV-1175-N, 2014 WL 12714837, at *4 (N.D. Tex. Sept. 19, 2014)).

There is only one paragraph in the FAC addressing the misrepresentation requirement of Section 1114(2)(D)(iv):

> The Defendant intentionally misrepresented to the UDRP Panel that the disputed Domain Name was used to attract, for commercial gain, Internet users to the Plaintiff's website or

>other on-line locations, creating the possibility of confusion with the mark of the Defendant as to the source or commercial origin of those products, though Defendant knew that there were no products of Defendant or Defendant's competitors being promoted by Plaintiff.

(Doc. 12, ¶ 34.) The remainder of Plaintiff's allegations broadly refer to "the actions of Defendant" without discussing any misrepresentation. (*See id.*, ¶¶ 6, 27.) In the three paragraphs in the FAC discussing the WIPO panel decision, Plaintiff merely alleges that Defendant initiated the UDRP proceeding and the panel "rendered a decision requiring the transfer of the domain name to Defendant." (Doc. 12, ¶ 14.)

Assuming that Plaintiff's allegations of Defendant's intentional misrepresentations to the panel are sufficient to survive a motion under Rule 12(b)(6), Plaintiff's FAC is devoid of any factual allegations related to WIPO's decision-making process. To state a claim, the FAC must include facts to support a conclusion that the panel based its decision to transfer the disputed domain name on Defendant's alleged misrepresentations. *See Balkan*, 2020 WL 6063254, at *3; *see also IFIXITUSA LLC*, 2022 WL 2117845, at *6. Because Plaintiff's FAC does not allege sufficient facts about what misstatements the WIPO panel relied on, Plaintiff has not sufficiently stated a claim for relief under Rule 12(b)(6). *See Baklan*, 2020 WL 6063254, at *4.[10] Therefore, the Court need not address the parties' myriad arguments related to whether Plaintiff plausibly alleged that Defendant made a knowing and material misrepresentation that the domain name is identical to, or confusingly similar to, or dilutive of a mark.

### 2. Section 1114(2)(D)(v)

Under Section 1114(2)(D)(v), "a domain name registrant who is aggrieved by an overreaching trademark owner may bring an action to declare that the domain name registration and use is not unlawful under the ACPA's 'cyberprivacy prevention' clause,

---

[10] Defendant asserts that the applicable pleading standard here is the heightened standard under Federal Rule of Civil Procedure 9(b) because a claim under Section 1114(2)(D)(iv) is a claim sounding in fraud. (Doc. 24 at 5-6.) Plaintiff disagrees, arguing that the Rule 8 notice pleading applies instead. (Doc. 26 at 7-9.) The Court finds that Plaintiff fails to state a claim under Section 1114(2)(D)(iv) that satisfies Rule 8, let alone Rule 9(b)'s heightened standard.

[Section] 1125(d)." *IFIXITUSA LLC*, 2022 WL 2117845, at *2. This "reverse domain hijacking claim," requires Plaintiff to establish four elements: (1) Plaintiff is the domain name registrant; (2) Plaintiff's domain name was suspended, disabled, or transferred under a policy implemented by a domain name registrar; (3) Defendant, as the trademark owner seeking the domain name transfer, had notice of the action; and (4) Plaintiff's use or registration of the domain name was not unlawful under the ACPA.[11] *Id.*; 15 U.S.C. § 1114(2)(D)(v).

The parties agree that Plaintiff satisfies the first three requirements.[12] Thus, the only remaining question is whether Plaintiff's FAC sufficiently alleges that Plaintiff's "registration or use of the disputed domain name is not unlawful under [the ACPA]." 15 U.S.C. § 1114(2)(D)(v). Courts have held that, to satisfy the lawful registration or use element of Section 1114(2)(D)(v), Plaintiff need only establish that its conduct did not violate one of the two provisions of Section 1125(d)(1). *IFIXITUSA LLC*, 2022 WL 2117845, at *2; *Strong Coll. Students Moving Inc. v. Coll. Hunks Hauling Junk Franchising LLC*, No. CV-12-01156-PHX-DJH, 2015 WL 12602438, at *8 (D. Ariz. May 15, 2015).

> To show that [its] conduct is not unlawful under [Section] 1125(d)(1), Plaintiff[] must "prove either (1) [it] did not register, traffic, or use a domain name that is identical or confusingly similar to [a mark that is distinctive at the time of registration of the domain name], or (2) [it] did not have a bad faith intent to profit from that mark."

*IFIXITUSA LLC*, 2022 WL 2117845, at *3 (quoting *Strong Coll. Students Moving Inc.*, 2015 WL 12602438, at *8) (alterations added); *see also Mira Holdings, Inc. v. Regents of University of California*, No. 6:18-cv-190-Orl-37GJK, 2018 WL 8244597, at *3 (M.D. Fla. Dec. 10, 2018); 15 U.S.C. §§ 1125(d)(1)(A)(i)–(ii), 1125(d)(1)(B)(i)–(ix). Defendant

---

[11] "The ACPA is codified in scattered sections of Title 15 of the United States Code, including 15 U.S.C. §§ 1114(2)(D) and 1125(d)." *IFIXITUSA LLC*, 2022 WL 2117845, at *1 (citations omitted).

[12] Although Defendant challenges whether Plaintiff is the domain name registrant for the purposes of statutory standing, Defendant does not repeat those arguments related to whether Plaintiff states a claim under Section 1114(2)(D)(v).

argues that Plaintiff's FAC is deficient on both prongs of the test. (Doc. 24 at 7, 10, 15.) The Court will address each of Defendant's arguments in turn.

### a. Distinctiveness

To satisfy the distinctiveness prong of Section 1125(d)(1), Plaintiff's FAC must allege that it did not register, traffic in, or use a domain that is identical or confusingly similar to a mark "that is distinctive [or famous] at the time of registration of the domain name." 15 U.S.C. § 1125(d)(1)(A)(ii)(I)–(II). In *GoPets Ltd. v. Hise*, the Ninth Circuit held that "registration," as used in Section 1125(d), is limited to the first registration of a domain name and does not encompass subsequent re-registrations. 657 F.3d 1024, 1032 (9th Cir. 2011). In other words, the distinctiveness or famousness of a mark, for the purposes of liability under Section 1125(d)(1), is judged at the time of the initial registration of a domain name. *Id.* at 1030. To find a domain name registrant liable under Section 1125(d)(1) for cyberpiracy, then, the asserted mark must have been distinctive or famous prior to the initial domain name registration. *Id.* at 1032 ("Because Edward Hise registered gopets.com in 1999, long before GoPets Ltd. registered its service mark, Digital Overture's re-registration and continued ownership of gopets.com does not violate [Section] 1125(d)(1)."). Because civil actions under Section 1114(2)(D)(v) seek a declaration that a domain name registrant did not violate Section 1125(d)(1) with its registration or use of a domain name, the *GoPets* holding necessarily applies here too. *See IFIXITUSA LLC*, 2022 WL 2117845, at *2; *Strong Coll. Students Moving Inc.*, 2015 WL 12602438, at *8.

Defendant's argument that the *GoPets* holding does not apply to the "traffics in or uses" element of Section 1125(d)(1) is not well taken. (*See* Doc. Doc. 29 at 8-9.) Section 1125(d)(1)(A) states:

> A person shall be liable in a civil action by the owner of a mark. . . , if. . . , that person— . . . registers, traffics in, or uses a domain name that—in the case of ***a mark that is distinctive at the time of registration of the domain name***, is identical or confusingly similarly to that mark[.]

*Id.* (emphasis added). By its own text, Section 1125(d)(1) liability only attaches to a domain owner's registration, trafficking, and use of a domain name if that domain name is identical

- 11 -

or confusingly similar to "a mark that is distinctive at the time of registration of the domain name." *Id. GoPets* interpreted what it means for a mark to be "distinctive at the time of registration of the domain name," contrary to Defendant's assertions. 657 F.3d 1024, 1030. Under *GoPets*, the distinctiveness of a mark is judged at the time of the initial registration of a domain name, not at the time of any subsequent re-registration of that domain name. *Id.* at 1030–32. Although Defendant points to disagreement with *GoPets* in other circuits, this Court is in the Ninth Circuit and is bound to apply its law. Moreover, to the extent Defendant asks this Court to rely on *DSPT Int'l v. Nahum*, 624 F.3d 1213 (9th Cir. 2010) instead of *GoPets*, the Court need not reach this issue. Even applying *GoPets*, as Plaintiff asks this Court to do, Plaintiff fails to state a claim for relief.[13]

In the FAC, Plaintiff alleges that it purchased and registered the disputed domain name in April of 2021. (Doc. 12, ¶ 9.) Plaintiff further asserts that "Defendant [UHSD] has no registered U.S. trademarks for 'Prominence Health.'" (*Id.*, ¶ 12.) Plaintiff alleges that Defendant filed a trademark registration application for "Prominence Health" on June 2, 2021, but that it has not yet been approved. (*Id.*) In its response, however, Plaintiff asserts an entirely new set of facts to support its Section 1114(2)(d)(v) claim. (Doc. 26 at 9-16.) Plaintiff's response alleges, for the first time, that the initial registration of the disputed domain name occurred in 2014 prior to Defendant's first use of its mark in commerce. (*Id.* at 11.) Importantly, though, the FAC contains no allegations relating to the initial 2014 domain name registration of ProminenceHealth.com or Defendant's first use of its marks in commerce. So, to the extent Plaintiff now attempts to argue that the initial 2014 registration of the domain name satisfies its burden to show that it did not register, traffic

---

[13] Defendant also argues that *GoPets* should not apply to this case because it alleges that Plaintiff is not a "bona fide purchaser" under traditional property law principles because Defendant inadvertently let the domain name registration lapse after settling a dispute with the previous owner of the domain. (Doc. 29 at 7.) Regardless of the *GoPets* court's discussion of common law property principles as support for its statutory interpretation, whether Plaintiff constitutes a bona fide purchaser of the website is not the relevant legal test. Instead, the relevant inquiry is whether Plaintiff registered, trafficked in or used a domain name identical or confusingly similar to a mark that was distinctive or famous at the time of the domain name registration. 15 U.S.C. § 1125(d)(1)(A)(ii)(I). *GoPets* limits that inquiry to the initial domain name registration. 657 F.3d at 1030–32. Defendant's reliance on apparent dicta about property law principles to distinguish *GoPets* from this case is misplaced.

in, or use a domain name that is identical or confusingly similar to a distinctive mark, Plaintiff failed to include these allegations in its FAC.[14] Plaintiff concedes that "the Complaint is admittedly not entirely clear about the[] dates" related to the first domain name registration and Defendant's trademark registration. (*See* Doc. 26 at 11.) Because *GoPets* requires the Court to analyze the distinctiveness of the mark at the time of the initial registration for violations of Section 1125(d)(1), and Plaintiff failed to allege facts for the Court to engage in that analysis without looking outside of the FAC, Plaintiff has failed to state a claim under the distinctiveness prong of the analysis.[15]

### b. Bad Faith

Section 1125(d)(1)(B) enumerates nine factors for courts to consider in evaluating whether a person has a bad faith intent to profit from a protected mark. 15 U.S.C. § 1125(d)(1)(B)(i)–(ix). "Courts need not march through the nine factors seriatim because their use is merely permissive and the most important grounds for finding bad faith are the unique circumstances of the case." *IFIXITUSA LLC*, 2022 WL 2117845, at *4 (quotations omitted).

Plaintiff addresses several of the bad faith intent factors in the FAC. Many of Plaintiff's allegations are merely conclusory statements that are identical to the bad faith factors recited in Section 1125(d)(1)(B), but some of them are not. Plaintiff alleges that it has maintained a legitimate, generic domain name investment business for the last ten years. (Doc. 12, ¶ 11.) Plaintiff further alleges that as part of its business plan, it began

---

[14] The Court notes that the WIPO panel generally discusses these dates in its decision and Plaintiff attached that decision to its Complaint. (*See* Doc. 1 at 18.) At oral argument, however, Plaintiff argued that the Court should not rely on the WIPO panel's recitation of the facts. Thus, Plaintiff's incorporation-by-reference of the WIPO panel decision cannot save its deficient complaint.

[15] To support its new allegations, Plaintiff relies on screen captures of both the WHOIS record for the disputed domain name and a USPTO trademark search page for Defendant's "Prominence Health Plan" mark. (Doc. 26 at 11-12.) Both parties extensively discuss these records in their respective briefs and ask the Court to take judicial notice of them, but they appear to dispute the inferences to be drawn from the facts within those records. (Doc. 26 at 11-12; Doc. 24 at 2; Doc. 29 at 3 n.2.) Neither party supplies the Court with "the necessary information" required to determine that the facts are "not subject to reasonable dispute" and "can be readily and accurately determined." *See* Fed. R. Evid. 201. Thus, the Court cannot take judicial notice of the disputed facts contained in those documents, even if they are otherwise susceptible to judicial notice. *See Khoja*, 899 F.3d at 999.

acquiring two-word domain names that contain the word "health." (*Id.*) Plaintiff further alleges that "Defendant UHS has no registered U.S. trademarks for 'Prominence Health,'" and a trademark search for those terms returned zero registrations for "Prominence Health" prior to Plaintiff's registration of the domain name. (*Id.*, ¶ 9.) Plaintiff further avers that although the domain name is currently for sale, "Plaintiff has never sold, transferred, or trafficked in the domain name" "[n]or has it at any time specifically offered to sell the domain name to Defendant." (*Id.*, ¶ 22.) "At all times, Plaintiff utilized the domain name in a bona fide manner for bona fide purposes." (*Id.*, ¶ 23.) Plaintiff also alleges that it did not have "any intent to divert customers from the mark owner's online location" or otherwise create "a likelihood of confusion" with Defendant's mark. Plaintiff asserts that the disputed domain name is generic. (*Id.*, ¶ 11.)

At the pleading stage, Plaintiff's allegations, taken as true and viewed in the light most favorable to Plaintiff, are enough to state a claim for relief. *See Twombly*, 550 U.S. at 555. Defendant recounts each factor over five pages of its motion, "relying on disputed facts, evidence not relied on in the complaint, and evidence not subject to judicial notice in an effort to demonstrate Plaintiff's purpose was unlawful." *Dent*, 2018 WL 11318189, at *3. Although the Court agrees with Defendant that Plaintiff "could have provided greater detail," Defendant invites the Court engage in a fact-intensive analysis of Plaintiff's alleged bad faith intent to profit from Defendant's mark that is inappropriate on a motion to dismiss under Rule 12(b)(6). *See IFIXITUSA LLC*, 2022 WL 2117845, at *3–4 (finding that a "motion to dismiss is not the proper vehicle to engage in a fact-specific analysis" regarding a Plaintiff's violation of Section 1125(d)(1) where the claims were plausible) (citations omitted).[16]

### C. Count Two – Injunction Under Section 1114(2)(D)

Section 1114(2)(D) provides that the court may "grant injunctive relief to the

---

[16] Defendant also argues that Plaintiff fails to plausibly allege that it qualifies for the ACPA's safe harbor provision. (Doc. 24 at 15-16.) Nowhere in Plaintiff's FAC nor Plaintiff's response does it assert that the safe harbor provision applies to its conduct. Thus, the Court need not weigh in on whether Plaintiff sufficiently states a claim under the ACPA's safe harbor provision in Section 1125(d)(1)(B)(ii).

domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant." 15 U.S.C. § 1114(2)(D)(iv)-(v). Although the parties do not address count two specifically, the Court notes that, to the extent Plaintiff seeks injunctive relief under Section 1114(2)(D)(iv), Plaintiff failed to state a claim for which relief could be granted under that statutory section. *See* Part III.B.1, *supra*. Because Plaintiff's Section 1114(2)(D)(v) claim survives dismissal, Plaintiff's request for injunctive relief under the same section also survives. *See IFIXITUSA LLC*, 2022 WL 2117845, at *7.

### D. Leave to Amend

Plaintiff argues that the Court should grant it leave to amend its deficient allegations. (Doc. 26 at 7, 17.) Defendant does not appear to oppose Plaintiff's request. Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The power to grant leave to amend . . . is entrusted to the discretion of the district court, which 'determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'" *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quotation omitted). District courts properly deny leave to amend if the proposed amendment would be futile or the amended complaint would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Based on th e dearth of factual allegations in Plaintiff's FAC related to its Section 1114(2)(D)(iv) claim, the Court cannot say that amendment would be futile or prejudicial to Defendant, nor that Plaintiff engaged in bad faith or undue delay in amending its original complaint. Moreover, the parties briefing addresses the relevance of the initial registration of the Disputed Domain and Defendant's first use of its mark in commerce, and these facts do not appear in the FAC. Accordingly, the Court grants Plaintiff leave to amend its FAC, as discussed herein.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 24) is granted in part and denied in part as follows:

1. Plaintiff's Section 1114(2)(D)(iv) claim is dismissed for failure to state a claim under Rule 12(b)(6).

2. The Motion is denied in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint within 14 days from the date of this Order.

Dated this 18th day of August, 2023.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge